## No. 18,730.

PEOPLE OF THE STATE OF COLORADO *v.* LESTER YOUNG
AND ROCKY MOUNTAIN FIREWORKS COMPANY.
(339 P. [2d] 672)

Decided May 18, 1959.   Rehearing denied June 8, 1959.

Mr. BARNEY O'KANE, District Attorney, Mr. LEONARD L. BEAL, Deputy, First Judicial District, for plaintiff in error.

Mr. WILLIAM PEHR, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PURSUANT to C.R.S. 1953, 39-7-27, the People of the State of Colorado seek reversal of a judgment of the district court quashing an Information which had charged the defendants in error, who will be referred to as defendants, with possession of fireworks and possession for the purpose of sale of fireworks. The prosecution is based upon C.R.S. 53-5-1 and 2 which provide as follows:

53-5-1. *"Definitions.* — 'Fireworks' means and includes any article, device or substance prepared for the primary purpose of producing a visual or auditory sensation by combustion, explosion, deflagration, or detonation, including, without limitation, the following articles

and devices commonly known and used as fireworks: toy cannons or toy canes in which explosives are used, blank cartridges, the type of balloon which requires fire underneath to propel the same, firecrackers, torpedoes, skyrockets, roman candles and daygo bombs. The term 'fireworks' shall not include toy pistols, toy guns, sparklers or torches which do not contain explosive charges or other devices in which paper caps manufactured in accordance with United States interstate commerce commission regulations for packing and shipping of toy paper caps are used and toy pistol paper caps manufactured as provided in this article."

53-5-2. *"Unlawful to sell or use.* — Except as provided in sections 53-5-3 and 53-5-4, it shall be unlawful for any person to offer for sale, expose for sale, sell, or have in his possession with intent to offer for sale or sell, or to use or explode any fireworks in the state of Colorado."

53-5-7 is also attacked in the motion to quash on the ground that it delegates legislative authority to police officials in allowing them to make a determination as to what constitutes fireworks and then to search and seize without a warrant based upon the prior determination.

The district court granted the motion to quash and specifically found 53-5-1 to be unconstitutional "for want of specificity in that such statute provides definitions so broad that persons intending to and operating within the permissive portion of said sections cannot ascertain with reasonable certainty which products may be legally offered for sale within the State of Colorado."

The court also condemned as unconstitutional Sec. 53-5-7 on the ground of unlawful delegation. However, inasmuch as the record does not indicate an unlawful seizure pursuant to 53-5-7 in the case at bar, no injury to defendants is shown, hence this section is not in issue.

The sole question presented for determination is whether 53-5-1 is so vague and indefinite as to render it

unconstitutional and void under Article II, Section 25 of the Constitution of Colorado and the Fourteenth Amendment of the Constitution of the United States, both of which prohibit deprivation of life, liberty and property without due process of law.

The gist of the arguments on behalf of defendants is that the statute is not sufficiently certain in its terms so that men of ordinary intelligence can readily understand where the boundaries lie between prohibition and permission.

Defendants contend:

a. That blasting caps, dynamite, loaded shot gun shells are not expressly prohibited.

b. That the examples of fireworks set forth in the statute "represent devices known to legislators during their boyhood," but do not embrace the possible names which the manufacturer might conjure.

c. That the items which the statute *permits* are so vaguely described as to render them impossible for ascertainment.

d. That fireworks *can be* defined in a manner as will advise manufacturers and sellers as to that which is permissible and that which is prohibited.

The discernible legislative intent is the protection of life and property from the injury and damage resulting from indiscriminate firing and exploding of fireworks and (no doubt) protection as well of the ear drums and nervous systems of the citizenry of Colorado. That the subject is a valid one for legislative action under the police power of the state is not here questioned. The narrow issue is that which has been indicated, namely, whether the statute is so vague, indefinite, uncertain and ambiguous as to render it void and unenforcible, thus subjecting the defendants to deprivation of life, liberty and property without due process of law (by reason of its failure to specify with more particularity the forbidden areas). Our answer to this question must be in the negative.

■ The term "fireworks" has a meaning which is well and quite generally understood. It calls to mind the many products and devices designed for display or celebration purposes and which explode or burn and explode and traditionally are used in the celebration of Independence Day or other holidays. Furthermore, we believe that the selection and use by the Legislature of this term was proper since it has a common and well understood meaning. Webster's new Collegiate Dictionary defines the term as follows:

"A device for producing a striking display, as of light, noise, or smoke, by the combustion of explosive or inflammable composition."

■ The above definition is not unlike the legal one which has been adopted by the General Assembly. Both are inclusive of items which produce a visual or auditory sensation by combustion or explosion. The list of examples contained in the statute is by way of illustration and not of limitation and is not to be given a strained construction. On the other hand, the list of *excluded* items were *not* set forth in the statute as examples of a broad class. This is a list of items which would normally be embraced within the definition of "fireworks." The Assembly has declared, however, that they are not to be included and in view of the fact that these sparklers, torches, etc., are listed as exceptions, the list must be construed strictly and can not be enlarged by construction. This is in accordance with the fundamental rule of construction which is set forth in 50 Am. Jur. 451, Sec. 431, Statutes.

■ The argument of counsel that the failure of the statute to include firearms, ammunition and dynamite renders the statute vague, or unreasonable and therefore invalid does not appeal to us as tenable. Such items are not commonly used for celebration or amusement purposes. It is the function of the Assembly to discover the particular evil to be controlled and to classify in accordance with such finding. We do not agree that it was

362

required to legislate completely and exhaustively in the entire field.

It was proper for the Legislature to exclude from the category of prohibited items those things which it did not consider to be dangerous, and we do not find this latter classification to be ambiguous or indefinite. Each item so excluded has a specific and well understood meaning in common usage and we think no ordinary person could be misled concerning the import of toy pistols, toy guns, sparklers, etc.

Defendants rely principally on the decision of this Court in *People v. Stanley,* 90 Colo. 315, 9 P. (2d) 288, wherein defendant was charged with violation of a state law declaring unlawful the sale of cantaloupes or melons which had not been certified as to maturity and fitness for shipment by a qualified inspector. The statute was condemned by this Court because of its indefiniteness. It is thus apparent that the ruling of the Court was based upon the failure of the statute to set forth specific rules or guides. Involved in administering the statute was the making of decisions based upon discretion of the inspector.

The pertinent portion of the opinion reads:

"It cannot be said that the work of inspecting cantaloupes and melons is of such a technical nature or so intricate that it cannot be prescribed by definite rules, regulations, specifications, classifications and standards (See California Statutes and Amendments to the Codes, 927, pages 1845, et seq.). Under these circumstances, the general rule is that a statute which attempts to vest in public officials arbitrary discretion and unlimited power with respect to a lawful business, without prescribing uniform rules and regulations, so that the officials as well as those affected thereby may govern themselves accordingly, is unconstitutional as violative of the provisions of the United States and Colorado Constitutions with respect to due process of law and equal rights and privileges."

This problem is not present in the fireworks statute. The enforcement officials are not here required to exercise discretion or judgment as to what constitutes fireworks as they were in ascertaining the state of greenness or ripeness of cantaloupe. Moreover, the regulation of the business involved in the *Stanley case* did not disclose the inherent risk and hazard which is present in the sale and possession of fireworks, and it is therefore not surprising that the Court would scrutinize carefully the attempted regulation on the subject of cantaloupes and melons.

Defendants also rely on *Winters v. New York,* 333 U.S. 507, 68 S. Ct. 665, 92 L. Ed. 840. The Supreme Court of the United States here held invalid a New York statute which prohibited distribution of magazines, newspapers and other publications dealing with criminal news, police reports, criminal deeds of bloodshed, lust or crime. It was reasoned that the failure to clearly distinguish between that which was indecent and obscene and material which might possibly carry a legitimate message rendered the statute not only indefinite but also in conflict with freedom of speech and press. In concluding that it failed to make the indicated distinctions, the Supreme Court declared:

"The statute as construed by the Court of Appeals does not limit punishment to the indecent and obscene, as formerly understood." 333 U.S. 519.

We do not feel that the statute at bar is subject to the criticism set forth in the *Winters case.* Contrary to the contention of counsel for the defendants, we are of the opinion that there exists a reasonable and proper delineation between harmful and non-harmful fireworks.

We are aided in our determination by two very recent decisions which were not presented to the trial court. These are *Commonwealth v. Bristow* (1958), 185 Pa. Super. 448, 138 Atl. (2d) 156, and *Acme Specialties Corp. v. Bibb* (1958), 13 Ill. (2d) 516, 150 N.E. (2d) 132. The

*Bristow case* is particularly persuasive in that it involved a statute very similar to the one which we are called upon to construe. The Pennsylvania statute defined fireworks in much the same manner that our statute defines it. We quote from the *Bristow* opinion as follows:

"Section 1 of the Law, 35 P.S. §1271, provides: 'The term "fireworks" shall mean and include any combustible or explosive composition or any substance or combination of substances, or * * * any article prepared for the purpose of producing a visible or an audible effect by combustion, explosion, deflagration or detonation, and shall include * * * toy cannons in which explosives are used, * * *'"

The Court held that toy cannons as used in the statute fall within the definition of fireworks.

"* * * But we hold that the toy cannons in the instant case clearly come within the statutory definition of fireworks, and that the prohibition of their sale is directly related to the promotion of the health, safety, and general welfare of the public. The record establishes the validity of our conclusions."

In discussing the meaning of the term "explosive" it was said:

"From the testimony and from the demonstration we are convinced that these are toy cannons in which explosives are used, and that they are of such a nature that the Legislature properly prohibited their sale in order to promote the public health, safety, and general welfare. The evidence establishes that the explosion which results is not harmless or of insignificant effect. Although the explosion may not be of sufficient force to substantially damage a human hand, it would certainly not be harmless to the human eye. There could be no other permissible conclusion even from the testimony of defendant's own witness. Children in particular need protection from such devices. Children are

naturally inquisitive about such objects, and they would be inclined to look into the barrel of these toys or point them at the faces of other children. Visible flame and expanding gases obviously would be dangerous in such situations. Moreover, the report or noise produced may be of sufficient intensity to amount to a nuisance. It was the legislative intent that the explosion of such fireworks should be proscribed as a danger to health and safety and as a nuisance resulting from the unreasonable audible effect."

Commenting further on another question which has been raised in the case at bar, that is, possible inclusion of harmless articles, the Court made the following statement:

"Admittedly, criminal statutes must be strictly construed; but they must also be construed with common sense. Com. v. Paul, supra, 177 Pa. Super. 289, 292, 111 A. 2d 374. We are not concerned with the fact that by some strained construction the Law might include harmless matters such as coal, charcoal, briquettes, or even candles. We will decide those cases when they are properly presented to us. Com. v. Paul, supra, 177 Pa. Super. 289, 293, 111 A. 2d 374. We are all of the opinion that the statute is not vague and indefinite as it applies to this defendant. As we have said, it seems to us that the sale of these toy cannons clearly constitutes the sale of fireworks as defined in the Law. A statute, especially one which promotes the health, safety, and general welfare of the public, will not be declared unconstitutional unless its nullity and invalidity are beyond a reasonable doubt. * * * "

Although the *Acme Specialties Corp. v. Bibb* decision did not specifically consider the question whether the statute was sufficiently definite, it did construe a provision in which the definitions are almost identical with those set forth in our statute. See Chap. 38, Sec. 276.27, Ill. Ann. Statutes. The sufficiency of the definition was

not even challenged in the *Acme case*. The question there was whether or not a 1957 amendment which specifically defined sparklers as fireworks was valid. Previously sparklers had been excluded in much the same manner that our statute excepted them. Against the contention that sparklers are not inherently dangerous and that the Legislature could not prohibit their sale and thus interfere with a lawful business, the Supreme Court of Illinois held that the exercise of the police power in this respect was entirely proper. Thus the Illinois Court tacitly upheld the statute in question, a statute very similar to the one here in question. It also held that the Legislature had acted validly in formulating the new definition.

There can be little doubt, following a reading of the opinion in the *Acme case* and the opinion in an earlier decision, *Acme Fireworks Corp. v. Bibb*, 6 Ill. (2d) 112, 126 N.E. (2d) 688, concerning the sufficiency of the statutory definition which is now before us. Both Illinois cases assume the propriety of the exercise of the power and the sufficiency of the definition.

There are a number of older decisions which uphold city ordinances prohibiting possession and sale of fireworks. The leading one is *Ex Parte Clark* (1940), 139 Tex. Cr. 385, 140 S.W. (2d) 854. Others include *Stoughton v. Ft. Worth* (Tex. Cr.), 277 S.W. (2d) 150; *Chappell v. Birmingham*, 236 Ala. 363, 181 So. 906; *Killebrew v. Mayor and Council of Wrightsville* (1916), 17 Ga. App. 809, 88 S.E. 590; *Manley v. Crescent Novelty Co.* (1903), 103 Mo. App. 135, 77 S.W. 489, and *City of Rome v. Foot* (1916), 162 N.Y. Supp. 781.

■ We conclude, from a study of the statutes and a consideration of the cited cases, that the provision (53-5-1) is constitutional and valid; hence in quashing the information the trial court was in error.

Accordingly, the judgment is reversed and the cause remanded with directions to reinstate the information and proceed as by law provided.

MR. JUSTICE HALL and MR. JUSTICE SUTTON not participating.